496 So.2d 1258 (1986)
Robert SCHNEIDER on Behalf of His Minor Child, Stacey A. SCHNEIDER
v.
SEARS ROEBUCK AND CO., Nash Martinez and State Farm Insurance Company.
No. 86-CA-160.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
Ivan David Warner, III, New Orleans, for plaintiff-appellant.
Robert S. Rooth, Marc G. Shachat, Joseph R. Ward, Jr., New Orleans, for defendants-appellees.
Before CHEHARDY, KLIEBERT and DUFRESNE, JJ.
DUFRESNE, Judge.
This appeal is taken by Stacey Schneider, plaintiff-appellant, from a jury verdict in favor of Sears, Roebuck and Company, defendant-appellee, in a products liability action growing out of injuries suffered by Schneider when a riding lawnmower sold by Sears ran over his hand and severed several fingers. Because we find no errors in the jury verdict, we affirm.
The lawnmower model in question was designed and placed into production in 1968. The particular machine which injured Schneider was bought from Sears by Nash Martinez, his godfather, in about 1973. On the day of the accident, Martinez brought the mower to a lot about a ten minute drive from his home to cut the grass. He brought Schnieder, who was 12 years old at the time, to help in clearing trash and debris. Martinez began cutting the grass, but was interrupted by someone interested in buying a car which he had for sale. He decided to return to his home to show the car. Before leaving, he instructed Schneider on how to operate the machine, watched him cut a bit of grass, and left. Schneider had never cut grass with the mower, and Martinez did not tell him not to get off of the machine without first stopping the motor.
*1259 Schneider, the only witness to his accident, testified that he noticed some trash in the grass which would be in his path on the next round of cutting. He put the mower in neutral gear and got off to pick up the debris. As he was doing so, the mower somehow jumped into reverse gear, knocked him down, and the blade severed his thumb and several fingers.
Schneider sued Martinez and his liability insurer, State Farm Insurance Company, for negligence, and Sears for defective design and manufacture of the mower. The jury cast Martinez and State Farm in judgment for $200,000.00 but exonerated Sears. Schneider now brings this appeal only as to the verdict exonerating Sears, that it was manifest error for the jury not to have found that the mower was defectively designed and had inadequate warning labels, and, second, that it abused its discretion in awarding only $200,000.00 in damages.
Schneider recognizes that the proper standard of review of his first alleged error is the "manifest error" rule as enunciated in Arceneaux v. Dominigue, 365 So.2d 1330 (La.1978). He urges here that such error did occur in that the evidence established a design defect, as well as a failure to warn of the dangers inherent in the mower.
The crux of the design defect argument is whether an automatic shut-off or "dead man" switch should have been used under the seat of the mower. Had such a device been installed, the mower would have automatically shut itself off when Schneider got off.
John L. Pfeffer, plaintiff's expert, testified, and it was not disputed that "dead man" switches were well known in 1968, and are very inexpensive and simple devices. In his opinion, had such a device been used on the mower, the accident would not have occurred because the mower would have stopped when Schneider left it. He further testified that he has designed various machines in his career, but never a lawnmower. He had never tested a mower, nor was he familiar with such testing procedures.
George Clarke, Sears' expert, was the person who designed the machine. He had extensive experience in mower testing and design, and was a member of the committee who prepared the ANSI safety standards for lawnmowers in effect in 1968. Clarke agreed that "dead man" switches have long been known and that they are inexpensive. He further testified that extensive testing had been done with such devices on lawnmowers in 1968, but that no manufacturer was installing them on its riding mowers at that time, and in 1985, only 3% of riding mowers were so equipped. He noted that the 1968 ANSI standards permitted the use of such switches, but did not mandate such use, and that the permissive use was to encourage manufacturers to develop a safe "dead man" switch, if possible.
Clarke explained at great length the results of pre 1968 tests done by manufacturers to develop a safe "dead man" switch, but noted that these efforts had been unsuccessful. Testing of the seat type device indicated that while it eliminated certain hazards, it created additional dangers to safe operation. He noted that riding mowers are generally used in larger spaces and on rougher terrain than hand mowers. In such operating conditions it was found that the rider was often jostled in the seat causing the motor to stop briefly. When the rider came back down on the seat, however, the motor would restart with a surge because of accumulated unburned fuel. Tests showed that this surge rendered the mower unstable and subject to turning over or throwing the rider from the machine.
On these facts, the jury obviously concluded that there was no defect in the design, but rather an aspect of the design which, although potentially dangerous, could not be corrected without introducing another dangerous potential into the machine. We find no manifest error in this determination. Our laws do not require manufacturers to design "accident proof" products, but only requires them to exercise reasonable care in their design. Cutchall *1260 v. Great American Pump Co., 460 So.2d 1106 (La.App. 2nd Cir.1984). Clarke's testimony was that the manufacturer had recognized the potential danger in the machine. It had done extensive testing with "dead man" devices to eliminate the dangers of operators getting off of the mowers without stopping the motors, only to find that such devices created additional hazards which were potentially more dangerous. In addition, plaintiff's expert, who admittedly had not tested mowers, did not address the dangers pointed up by Clarke in the use of "dead man" switches. Clearly, there was abundant evidence before the jury which upon reasonable evaluation of credibility furnished a reasonable factual basis for its finding, Canter v. Koehring, 283 So.2d 716 (La.1973).
The next issue is whether Sears breached its duty to warn users of the mower of the hazards known by it to exist in the product during its foreseeable use, where the ordinary user would not ordinarily know of those hazards. Quattlebaum v. Hy-Reach Equipment., 453 So.2d 578 (La. App. 1st Cir.1984). It was undisputed that Sears provided a user manual, which set forth in bold lettering a list of Rules for Safe Operation. Rule 1 stated "Do not allow minors to operate or be near the equipment unless properly supervised". Rule 13 stated "Stop the engine whenever you leave the equipment, even for a moment...". In addition, a "hand tag" was provided which also contained the rules for operation, and which the user was instructed to hang in the area where the motor was kept. Finally, a label affixed to the mower itself instructed users to read the owner's manual before starting the machine.
Martinez testified that he had read the owner's manual and was aware of the warnings, but didn't think of them when he left the twelve year old plaintiff alone with the mower. He also admitted that he did not instruct the boy to turn off the motor if he left the machine. Again, we find nothing manifestly erroneous in the jury's factual determination that these warnings were sufficient to place the user on notice of the potential dangers of the mower, Quattlebaum v. Hy-Reach Equipment, supra, and that the sole cause of the accident was the negligence of Martinez.
The final issue raised is whether the award of $200,000.00 was an abuse of the jury's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). However, because of our determination that there was no manifest error in the jury's exoneration of Sears from liability, we do not reach this issue. Plaintiff only appealed that portion of the judgment finding Sears not at fault. Because no appeal was brought and no errors urged in regard to the judgment against Martinez and State Farm, that portion of the judgment is final.
For the foregoing reasons the judgment appealed from is affirmed.
AFFIRMED.